**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SPIRO B., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-3082 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Spiro B. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed and the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

**BACKGROUND**

Plaintiff protectively applied for SSI on March 5, 2021, alleging disability since October 21, 2014 due to agoraphobia, chronic anxiety, post-traumatic stress disorder ("PTSD"), social phobia, panic attacks, bipolar disorder, impulsive behavior, headaches, and back problems. Administrative Record ("R.") 176, 201.

Plaintiff subsequently amended the alleged onset date to March 5, 2021. R. 18-19, 53. Born in October 1969, plaintiff was 51 years old as of the application date, making him a person closely approaching advanced age (age 50-54). 20 C.F.R. § 416.963(d); R. 176. He completed three years of college and lives alone in an apartment. R. 38, 41, 202. Plaintiff spent more than 15 years managing a restaurant business but has not worked since October 2014 due to his conditions. R. 201-02.

The Social Security Administration denied plaintiff's application initially and upon reconsideration. R. 18, 61-76. Plaintiff filed a timely request for a hearing and on August 9, 2022, he appeared before an administrative law judge ("ALJ"). R. 35. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Julie Bose (the "VE").[1] R. 37-60. On October 5, 2022, the ALJ found that plaintiff's social anxiety disorder with agoraphobia, depressive disorder, bipolar disorder, affective disorder, PTSD, and personality disorder are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21-23.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations. R. 23-27. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could perform a

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

significant number of jobs available in the national economy. R. 28-29. As a result, the ALJ concluded that plaintiff was not disabled at any time from the March 5, 2021 application date through the date of the decision. R. 29. On March 16, 2023, the Appeals Council denied plaintiff's request for review. R. 1-6. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal and remand, plaintiff argues that the ALJ: (1) made a flawed RFC determination; (2) erred in assessing the opinion evidence of record; and (3) improperly discounted his subjective statements regarding his limitations.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## **DISCUSSION**

### A.    **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

involves analyzing whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or a combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021); *see also Melvin J. v. Kijakazi*, No. 20 CV 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial

review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.    Analysis**

### 1.    RFC Determination

Plaintiff argues that the case must be reversed and remanded because the ALJ made a flawed RFC determination. Dkt. 16 at 11-13; Dkt. 29 at 4-5. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 CV 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 CV 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that despite plaintiff's mental impairments, he is able to: understand, remember, and carry out simple, routine 1-2 step instructions; use judgment limited to simple work-related decisions; tolerate occasional interaction with supervisors and coworkers; and engage in brief and superficial interaction with the general public. R. 23. Plaintiff objects that this RFC fails to account for his agoraphobia or the deficits in his ability to maintain concentration. Dkt. 16 at 11-13; Dkt. 29 at 4-5. The Court disagrees.

The record as a whole demonstrates that the ALJ appropriately considered plaintiff's agoraphobia and reasonably accounted for the deficits in his ability to maintain concentration. The ALJ explained that in assessing plaintiff's RFC, she was partially persuaded by the November 30, 2021 opinion from state agency psychological reviewer Howard Tin, Psy.D. R. 26. Dr. Tin assessed plaintiff with a moderate limitation in concentration and attention but concluded that he can nonetheless "maintain the concentration and persistence necessary to carry out more than simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment," and perform 1-2 step tasks. R. 71, 74. The ALJ reasonably relied on that conclusion in finding plaintiff capable of simple, routine work involving 1-2 step instructions. R. 23, 26. *See, e.g., Craig C. v. Kijakazi*, No. 21 CV 1381, 2023 WL 3763533, at \*3 (N.D. Ill. June 1, 2023) (ALJ may rely on opinion of physician who translates a finding of moderate limitations in concentration, persistence, or pace into an RFC for simple, routine work).

Dr. Tin also acknowledged plaintiff's agoraphobia but found him capable of "attending work regularly" and "complet[ing] a workday with customary breaks." R. 72, 74. This is consistent with the ALJ's conclusion that plaintiff can sustain full-time employment despite his difficulties leaving his home. R. 23, 26. *See Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at \*15 (N.D. Ill. Dec. 19, 2019) ("The opinion of a non-examining state agency consultant is the type of medical evidence an ALJ may rely upon to craft a claimant's R[F]C").

6

Viewing the record as a whole, the ALJ did not commit reversible error in determining plaintiff's RFC. Since that decision is supported by substantial evidence, it does not provide a basis for remand. *See Salvador H. v. Kijakazi*, No. 22 CV 7254, 2023 WL 5017944, at \*5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 587 U.S at 103) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

### 2. Opinion Evidence

Plaintiff next argues that the case should be reversed for proper consideration of the opinion from his therapist, Christy Stewart, MSW. Dkt. 16 at 13-15; Dkt. 29 at 5-6. Since plaintiff filed his claim in March 2021, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 416.920c(a). *See also Robert J. L. v. O'Malley*, No. 20 CV 50444, 2024 WL 809091, at \*2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to determine the "persuasiveness" of each medical opinion considering: "supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (citing 20 C.F.R. § 416.920c(c)(1)-(5)). "The most important of these factors are supportability and

consistency"; indeed, "[t]he ALJ must explain its consideration of these two factors but need not address the remaining factors." *Id.* at 497.

On November 16, 2021, Ms. Stewart completed a mental impairment questionnaire indicating that plaintiff suffers from severe functional restrictions that preclude all employment. R. 1341-44. According to Ms. Stewart, plaintiff is markedly limited in the ability to: understand, remember, and carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted by them; make simple work-related decisions; travel in unfamiliar places; set realistic goals or make plans independently of others; understand, remember, or apply information; and maintain concentration, persistence, or pace. R. 1342, 1344. Plaintiff is moderately limited in most other areas, including: remembering locations and work-like procedures; maintaining regular attendance and being punctual within customary tolerances; asking simple questions or requesting assistance; responding appropriately to changes in a routine work setting; and adapting and managing himself. *Id.*

In support of this assessment, Ms. Stewart explained that plaintiff "has been observed to regularly struggle to remember details about his life or what was said in a conversation, sometimes even just a few moments later." R. 1342. He has difficulty understanding and following simple instructions and is socially isolated and unable to leave the house. *Id.* Plaintiff is afraid to take public transportation and regularly experiences debilitating panic attacks that sometimes cause him to lose consciousness. R. 1342-43. According to Ms. Stewart, plaintiff is so afraid of the

panic attacks that he avoids situations that may trigger them. R. 1343. Ms. Stewart stated that given these symptoms, plaintiff would be absent from work more than three times per month, and his symptoms would interfere with his attention and concentration needed to perform even simple tasks "21% or more" of a typical workday. R. 1344.

The ALJ discussed this opinion and reasonably concluded that it was inconsistent with the overall record. R. 27; *see Alejandrina A. v. Kijakazi*, No. 20 CV 4089, 2023 WL 2539239, at \*12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record."). As noted, Dr. Tin reviewed the entire record and found plaintiff capable of full-time work involving simple, routine tasks. R. 72-74. *See Stephanie A. v. Kijakazi*, No. 21-CV-775-SPM, 2022 WL 1153464, at \*8 (S.D. Ill. Apr. 19, 2022) (quoting SSR 96-6p, 1996 WL 374180, at \*2) ("State agency medical . . . consultants are highly qualified physicians . . . who are experts in the evaluation of medical issues in disability claims under the Act."). Other medical evaluations similarly contradict Ms. Stewart's assessment. Specifically, at a March 16, 2021 evaluation with family physician Andrew M. Pavlatos, M.D., plaintiff was not nervous or anxious and he presented with a normal mood and affect. R. 25, 1493-94. Medication management notes from psychiatrist Jonathan D. Getz, M.D. in April, May, and June 2021 documented a largely normal mood, no major panic attacks, reduced anxiety on risperidone, and normal insight and judgment. R. 25, 992, 1002, 1004, 1013-14.

Further, on June 23, 2021, plaintiff underwent independent medical and psychological examinations. Ratnesh Kumar, M.D. observed that plaintiff arrived on time and was alert and oriented. R. 25, 906, 910. Though plaintiff was "anxious-appearing and somnolent," he had intact memory, and his overall effort and cooperation were excellent. R. 25, 910. Michael E. Stone, Psy.D. described plaintiff as cooperative and interactive with appropriate behavior. R. 25, 901. He displayed a normal affect, unremarkable mood, normal thought content and process, and no impaired judgment. R. 25, 903. Dr. Stone assessed good ability to relate to others, good ability to understand, remember and follow simple instructions, good ability to maintain attention for simple work, and good ability to withstand stress associated with day-to-day work activity. R. 25, 903-04.

Additionally, plaintiff's anxiety remained fairly well-controlled at a September 24, 2021 appointment with Dr. Getz. R. 1016. Plaintiff reported infrequent but occasional feelings of panic, was doing better on risperidone, and exhibited an anxious mood with good insight and judgment. R. 1016-17. During an appointment with James R. Diesfeld, M.D. in March 2022, plaintiff was pleasant with no notable mental symptoms. R. 26, 1505. Finally, when plaintiff saw Dr. Pavlatos for an annual exam on April 12, 2022, he was not nervous or anxious and presented with a normal mood and affect. R. 26, 1495-96.

In response to these records that contradict Ms. Stewart's assessment, plaintiff argues that the ALJ failed to address the supportability of Ms. Stewart's opinion. Dkt. 16 at 14-15; Dkt. 29 at 6. Supportability considers "the objective

medical evidence on which the opinion is grounded." *Joshua B. v. Comm'r of Soc. Sec.*, No. 1:24-CV-1494-RLH, 2026 WL 659085, at \*7 (C.D. Ill. Mar. 9, 2026). Here, the ALJ reviewed Ms. Stewart's treatment notes in detail but found they only partly supported the significant limitations set forth in her opinion. R. 25-27 (citing R. 1371-74, 1416-42, 1444-45, 1448, 1452, 1454). For example, plaintiff routinely presented with a fair or euthymic mood despite some occasional agitation, irritability and difficulty following the conversation. *Id.* Plaintiff does not identify any specific treatment notes that the ALJ failed to consider, much less ones that support Ms. Stewart's assessment that plaintiff is completely incapable of handling the mental demands of full-time work.

"The ALJ's analysis of medical opinions must be allowed 'to stand so long as the ALJ minimally articulated her reasons—a very deferential standard that the Seventh Circuit has, in fact, deemed lax.'" *Grace H. v. Bisignano*, No. 24 CV 50519, 2025 WL 3552408, at \*3 (N.D. Ill. Dec. 11, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023)). Viewing the record as a whole, the ALJ did not commit any reversible errors in evaluating the opinion from Ms. Stewart. "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 CV 50290, 2024 WL 4347193, at \*2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of Ms. Stewart's opinion is denied.

### 3. Subjective Symptom Evaluation

Plaintiff's primary argument for remand and reversal is that the ALJ erred in discounting his subjective statements regarding social anxiety and agoraphobia. Dkt. 16 at 6-10; Dkt. 29 at 2-4. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 CV 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support"). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

The ALJ considered plaintiff's complaints of disabling symptoms but found they were not supported by objective evidence. R. 23-24. As discussed, plaintiff routinely presented with relatively slight mental abnormalities during medical exams and the ALJ reasonably credited evidence from Dr. Tin that plaintiff is capable of handling the mental requirements of simple work. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record"). The ALJ also noted that plaintiff engaged in a variety of activities from the March 5, 2021 alleged disability onset date through the date of the ALJ's decision that were inconsistent with his complaints of disabling agoraphobia and social anxiety, including: grocery shopping with a family member; bike riding in the neighborhood; going to the post office to mail packages he sold through eBay; attending a funeral; taking public transportation to see his girlfriend at the time; attending a street festival; and spending time with his family. R. 24-26. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated.").

Plaintiff faults the ALJ for failing to acknowledge that all his therapy sessions with Ms. Stewart and Dr. Getz took place by telephone. Dkt. 16 at 7-8; Dkt. 29 at 2. Plaintiff apparently believes that the only reason these treaters documented any normal mental findings is because he was "within his own home"

13

where he felt more comfortable. *Id.* at 7. Yet plaintiff attended multiple in-person evaluations where doctors also described his mental status as largely normal: Dr. Pavlatos on March 16, 2021; Dr. Kumar and Dr. Stone on June 23, 2021, R. 25, 901, 903-04, 910, 1493-94; Dr. Diesfeld in March 2022, R. 26, 1505; and Dr. Pavlatos on April 12, 2022. R. 26, 1495-96. The ALJ reasonably concluded that these evaluations were inconsistent with plaintiff's allegations of severe agoraphobia and mental disability. *See, e.g., Gwendolyn B. v. Saul*, No. 20 CV 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Plaintiff argues that the ALJ placed too much emphasis on his activities of daily living, noting that his panic attacks are intermittent and irregular, and he "never claimed to be a total shut-in" or "completely homebound." Dkt. 16 at 8, 9; Dkt. 29 at 2, 3. That may be, but the ALJ reasonably cited the activities as one factor undermining plaintiff's allegations of debilitating agoraphobia. And contrary to plaintiff's suggestion, the ALJ did not equate plaintiff's ability to engage in the activities with an ability to perform full-time work. Instead, the ALJ "used [plaintiff's] reported activities to assess the credibility of h[is] statements concerning the intensity, persistence, or limiting effects of h[is] symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

14

Plaintiff contends the ALJ placed too much emphasis on his lack of psychiatric hospitalizations to suggest he is capable of working. Dkt. 16 at 10; Dkt. 29 at 4. "It is true that an individual who does not require inpatient psychiatric hospitalization may still be unable to work because of mental impairment, and it would be wrong to conclude otherwise." *Reggie N. v. Kijakazi*, No. 21 CV 63, 2023 WL 5277877, at *2 (N.D. Ill. Aug. 16, 2023) (citing *Martinez v. Kijakazi*, 71 F.4th 1076, 1083 (7th Cir. 2023)). Here, however, the ALJ did not equate plaintiff's lack of hospitalization with an ability to work or rely solely on that evidence in discounting plaintiff's subjective statements. R. 24, 26, 27. As a result, any error the ALJ may have made in discussing hospitalizations does not provide a basis for remand. *See Elizabeth D. v. Saul*, No. 19 CV 6024, 2021 WL 148831, at *13 (N.D. Ill. Jan. 15, 2021) (affirming denial of benefits where ALJ "did not find that the lack of psychiatric hospitalizations demonstrated that [claimant] had no limits on her ability to function or necessarily meant that she could perform full-time work.").

The ALJ did err in stating that plaintiff's panic attacks improved with over-the-counter medication. R. 25. The records reflect that some shakiness in plaintiff's hands that was unrelated to his panic attacks stopped when he discontinued an over-the-counter medication he was taking for another medical condition. R. 992. Regardless, an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). And "even if reasonable minds could differ on the ALJ's rejection of [plaintiff's]

testimony, we will not reweigh evidence or substitute our judgment for the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Viewing the record as a whole, using a common-sense approach, *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019), the ALJ provided good reasons for discrediting plaintiff's testimony and that decision is supported by substantial evidence and not patently wrong. Plaintiff's request to remand the case for further consideration of this issue is denied.

### CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand the case is denied, and the Commissioner's motion for summary judgment [24] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 4/24/2026